Case 3:19-cv-00178   Document 48   Filed on 03/10/21 in TXSD   Page 1 of 8

United States District Court
Southern District of Texas
**ENTERED**
March 10, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

No. 3:19-CV-178

JARED MCNEEL, ET AL., *PLAINTIFFS*,

v.

KIDDIE ACADEMY DOMESTIC FRANCHISING, LLC, *DEFENDANT*.

## MEMORANDUM OPINION AND ORDER

JEFFREY VINCENT BROWN, UNITED STATES DISTRICT JUDGE.

The sole issue in this wrongful-death suit is one of vicarious liability. The defendant, a childcare-center franchisor, argues that under the terms of its franchise contract, it bears no liability for the franchisee's negligence. Because the court disagrees, it denies the franchisor's motion for summary judgment.[1]

On August 27, 2018, three-month-old Skylar Mae McNeel was found dead, face down, in her crib.[2] At the time of her death, Skylar was under the care of a childcare franchisee, Kiddie Academy of League City ("the franchisee").[3] The

---

[1] Dkt. 25.
[2] Dkt. 45 at ¶ 5.
[3] *Id.*

1

plaintiffs here are Skylar's parents, Jared and Lindsey McNeel. They bring this lawsuit, both individually and as representatives of Skylar's estate, against the franchisor, Kiddie Academy Domestic Franchising, LLC ("Kiddie Academy").

The McNeels allege that multiple missteps contributed to Skylar's death, including failing to place her on her back, ensure her crib was free of blankets and pillows, monitor her, and otherwise comply with various ordinances, guidelines, and operating procedures.[4] According to the McNeels, Kiddie Academy should have exercised its contractual right to prevent and remedy these missteps.[5]

The McNeels originally sued in state court.[6] After the franchisee and other defendants were dismissed, Kiddie Academy removed the case to this court.[7] Now it has moved for summary judgment, contending it is not vicariously liable for its franchisee's negligence.[8] But the McNeels offer multiple theories of vicarious liability. Among them is contractual control—the notion that the franchise agreement afforded Kiddie Academy so much control over the franchisee that its

---

[4] *Id.* at ¶ 25.
[5] *Id.* at ¶ 26.
[6] Dkt. 1 at 1–2.
[7] *Id.* at 3.
[8] *See generally* Dkt. 25.

negligence should be imputed to Kiddie Academy. As this is a question of law, it is properly resolved on summary judgment.[9]

The franchise agreement expressly designates the franchisee as an independent contractor.[10] As a general matter, "an employer has no duty to ensure that an independent contractor performs its work in a safe manner."[11] But there is an exception: "an employer can be held vicariously liable for the actions of an independent contractor if the employer retains some control over the manner in which the contractor performs the work that causes the damage."[12]

The right to control is often spelled out in the contract itself.[13] "A contract may impose control upon a party thereby creating a duty of care."[14] That duty of care, in turn, is commensurate with the control retained over the contractor.[15]

---

[9] *See Shell Oil v. Khan*, 138 S.W.3d 288, 292 (Tex. 2004) (stating that the question whether there has been an "explicit contractual assignment . . . of control" is "a question of law for the court"); *see also Lee Lewis Constr. v. Harrison*, 70 S.W.3d 778, 783 (Tex. 2001) ("Determining what a contrast says is generally a question of law for the court, while determining whether someone exercised actual control is generally a question of fact for the jury.").
[10] Dkt. 25-2 at 68.
[11] *Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 791 (Tex. 2006).
[12] *Id*. Notably, the case law treats the control issue the same whether the relevant relationship is employer/independent contractor, general contractor/independent contractor, or—as in this case—franchisor/franchisee.
[13] *See Khan*, 138 S.W.3d at 292.
[14] *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 606 (Tex. 2002).
[15] *Calvasina v. Wal-Mart Real Estate Business Trust*, 906 F. Supp. 2d 625, 630 (W.D. Tex. 2012) (citing *Hoechst–Celanese v. Mendez*, 967 S.W.2d 354, 355 (Tex. 1998)).

The parties dispute how much control the franchise agreement gave Kiddie Academy. On the one hand, Kiddie Academy argues the contract gave it merely supervisory control over the franchisee. With just a supervisory right, Kiddie Academy says, its duty was only to ensure the procedures it promulgated did not "unreasonably increase, rather than decrease, the probability and severity of [Skylar's] injury."[16] On the other hand, the McNeels argue the contract permitted Kiddie Academy to control the "operative details"[17] of the franchisee's work. With this more intensive level of control, the McNeels say, the franchisee's negligence can and should be imputed to Kiddie Academy.

The McNeels have the better reading of the contract. Like many franchise agreements, Kiddie Academy's allows it a degree of control over the big-picture operations of its franchisee. This includes the right to inspect the facility,[18] provide plans and specifications,[19] train the franchisee's childcare directors,[20] and require the franchisee to follow certain standards of practice and internal operating

---

[16] *Mendez*, 967 S.W.2d at 358.
[17] *Id.* at 356 (quoting RESTATEMENT (SECOND) OF TORTS § 414 cmt. a).
[18] Dkt. 25-2 at 15.
[19] *Id.* at 14.
[20] *Id.* at 14, 29.

procedures.[21] Among these procedures is the "Kiddie Academy Infant/Toddler Safe Sleep Policy," which establishes safe-sleep practices for infants.[22]

Ordinarily, merely retaining such supervisory rights would not rise to a degree of control high enough to impute liability. Indeed, in two cases Kiddie Academy relies on most keenly—*Domino's Pizza, LLC v. Reddy* and *Fitz v. Days Inns Worldwide*—courts concluded similar contractual provisions did not expose the franchisor to liability, as the right to control did not reach the "operative details" of the franchisee's work.[23]

But unlike those cases, the franchise agreement here gives Kiddie Academy a substantial amount of additional power. Section 16.3 of the contract provides that in the event of a default (*e.g.*, the franchisee operates in a dangerous manner or fails to follow such procedures as the safe-sleep policy), Kiddie Academy may

> enter upon the premises of the [f]ranchised [b]usiness and exercise *complete authority* with respect to the operation and administration of the [f]ranchised [b]usiness until such time as [Kiddie Academy] determines that the default of [the f]ranchisee has been cured and that there is compliance with the requirements of this [a]greement.[24]

---

[21] *Id.* at 58–59.
[22] Dkt. 30 at 12.
[23] *See Domino's Pizza, LLC v. Reddy*, No. 09-14-00058-CV, 2015 WL 1247349, at *5 (Tex. App.—Beaumont Mar. 19, 2015, pet. denied); *Fitz v. Days Inns Worldwide*, 147 S.W.3d 467, 473 (Tex. App.—San Antonio 2004, pet. denied).
[24] Dkt. 25-2 at 60.

In other words, Kiddie Academy retained a right to control the "operative details" of the franchisee's business.[25]

To be sure, Kiddie Academy was not exercising this right of control at the time of Skylar's death. Indeed, given the allegations that the franchisee had prior defaulting events, the parties argue whether Kiddie Academy should have asserted control sometime before Skylar's death.[26] But none of that matters here. As the Supreme Court of Texas has held, "[i]f the right of control over work details has a contractual basis, the circumstance that no actual control was exercised will not absolve the general contractor of liability."[27]

Texas's El Paso Court of Appeals confronted a similar issue in *DeLeon v. Thos. S. Byrne, Ltd.*[28] There, an agreement permitted a general contractor to substitute an independent contractor's workmen and materials if the independent contractor performed the work insufficiently or incorrectly.[29] The court of appeals held that this agreement "essentially gave [the general contractor] the right and discretion to control the means, methods, and details of [the independent contractor's] work to

---

[25] *Mendez*, 967 S.W.2d at 356 (quoting RESTATEMENT (SECOND) OF TORTS § 414 cmt. c).
[26] *See* Dkt. 30 at 11.
[27] *Elliot–Williams Co. v. Diaz*, 9 S.W.3d 801, 804 (Tex. 1999).
[28] No. 02-10-00438-CV, 2012 WL 42942 (Tex. App.—El Paso Jan. 5, 2012, no pet.).
[29] *Id.* at *5.

the extent that [the independent contractor] was not entirely free to do its work in its own way."[30]

The same can be said of Kiddie Academy's franchise contract. In the event the franchisee's operations fail to meet Kiddie Academy's standards (*i.e.*, a default), Kiddie Academy may step in and exercise "complete authority" over its operation. And as in *DeLeon*, it matters not that Kiddie Academy was not in fact exercising this right at the time of the alleged negligence.[31] So long as the retained control relates "to the injury the negligence causes," the right to exercise that control is sufficient to impart liability.[32]

In the event of default, which would include a failure to adhere to the safe-sleep policy, the franchise agreement grants Kiddie Academy the power to exercise "complete authority" over the franchisee's operation. By retaining such a broad contractual right to control operative details, Kiddie Academy exposed itself to vicarious liability for the franchisee's negligence.

\* \* \*

The court denies Kiddie Academy's motion for summary judgment.[33]

---

[30] *Id.*
[31] *DeLeon*, 2012 WL 42942, at *5.
[32] *Elliot–Williams Co.*, 9 S.W.3d at 804 (stating that "the control must relate to the injury the negligence causes").
[33] Dkt. 25.

7

Signed on Galveston Island on the 10th day of March, 2021.

                                           _____
                                           JEFFREY VINCENT BROWN
                                         UNITED STATES DISTRICT JUDGE